1

2

3

4

5

6

7

8

9

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE EASTERN DISTRICT OF CALIFORNIA

12   STEVEN PAUL SMITH,

13            Petitioner,                No. CIV S-02-1583 DFL CMK P

14      vs.

15   A. A. LAMARQUE, Warden,

16            Respondents.
                                    FINDINGS AND  RECOMMENDATIONS
17   _____
     _____/
18

19           Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas

20   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered in

21   the El Dorado County Superior Court after a jury found him guilty of possession of

22   methamphetamine for sale (Cal. Health & Safety Code sections 11378 and 11377) and accessory

23   after the fact (Cal. Penal Code sections 31 and 148(a)).  Petitioner sustained special allegations

24   under Cal. Penal Code sections 667(d) and 667.5(b).  Petitioner was sentenced to fifty-five years

25   to life, in state prison.

26   ///

                                          1

Procedural History[1]

In El Dorado County Superior Court, a jury found petitioner guilty of one count of methamphetamine possession for sale, Cal. Health & Saf. Code § 11378;  one count of methamphetamine possession, Cal. Health & Saf. Code § 11377(a);  accessory to methamphetamine possession for sale, Cal. Health & Saf. Code § 11378 & Cal. Penal Code § 32; and one count of resisting a peace officer, Cal. Penal Code § 148(a).[2]  Petitioner also received special enhancements under Cal. Penal Code sections 667(d) and 667.5(b).  Petitioner was sentenced to fifty-five years to life, in state prison.

On September 13, 2000, petitioner filed an appeal with the California Court of Appeal, Third Appellate District, alleging some of the grounds in the instant petition.   Petitioner then filed his appeal with the California Supreme Court, which was denied on October 13, 2000.

Petitioner filed a petition for writ of habeas corpus with the El Dorado County Superior Court.  It was denied on December 14, 2001.  Petitioner then filed his writ of habeas corpus with the California Court of Appeal, Third Appellate District.  The petition was again denied on January 10, 2002.  Finally, petitioner filed his habeas corpus petition with the California Supreme Court, which was denied on June 12, 2002.

On July 8, 2002, the petitioner filed a federal petition for review with this court.  On October 1, 2002, this court ordered the respondent to file its response.  The petitioner's federal petition for writ of habeas corpus is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

///

///

---

[1]  See Pet. at pages numbered 1  through 3; Resp't's Answer at 3.

[2]  Pet. was also convicted in a separate proceeding of statutory rape in violation of Cal. Penal Code § 261.5(c).  Relevant to the instant petition is the fact that the petitioner was sentenced for statutory rape and for the charges at issue here, in a single, combined proceeding.

1    Factual Background[3]

2              On October 29, 1996, El Dorado County deputy sheriffs
     attempted to serve a search warrant for Greg W. Gyorgy at 4872
3    Squaw Hollow Court, petitioner's residence.  Gyorgy was wanted
     for failing to appear on a charge of possession of
4    methamphetamine for sale.

5              As the officers drove near to the Squaw Hollow residence,
     they encountered petitioner driving toward them in a white car with
6    a female passenger.  When petitioner saw the officers, he
     immediately backed his car toward the residence but crashed into a
7    tree.  Petitioner got out of the car, ran toward the house yelled
     something like "Run, Greg, run it's the cops."

8
               Petitioner was apprehended.  Spontaneously, he stated that
9    Gyorgy was living there, that he knew Gyorgy was wanted, and
     that he was trying to warn Gyorgy to get away.  Officers found a
10   syringe and over $2,000 on petitioner.  In the car that petitioner had
     been driving, officers also found two quantities of
11   methamphetamine in the respective amounts of 6.2 grams and 1.8
     grams.
12
               Officers obtained a second search warrant for petitioner's
13   residence and surrounding property.  They found over 39 grams of
     methamphetamine in a detached garage on the property, along
14   with, among other drug sale-related items, a scale and an electronic
     organizer storing "pay/owe" information.
15

16   Standard of Review

17             A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

18   some transgression of federal law binding on the state courts.  Engle v. Isaac, 456 U.S. 107, 119

19   (1982); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985).  A federal writ is not available

20   for alleged error in the interpretation or application of state law.  Estelle v. McGuire, 502 U.S.

21   62, 67-68 (1991); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).

22

23

24   ──────────────

     [3] The facts of petitioner's crime are not in dispute.  The summary of facts contained in the
25   unpublished opinion of the California Court of Appeals are set forth as background to the
     discussion of petitioner's jury instruction claims.  For convenience, the word "defendant" has
26   been replaced with the word "petitioner."

                                          3

1       Sections 2254 as amended in 1996 [4] sets forth the following standards of review

2    to be applied by federal courts to state court decisions:

3        An application for a writ of habeas corpus on behalf of a
     person in custody pursuant to the judgment of a State court shall
4    not be granted with respect to any claim that was adjudicated on
     the merits in State court proceedings unless the adjudication of the
5    claim-

6       (1) resulted in a decision that was contrary to, or involved an
     unreasonable application of, clearly established Federal law, as
7    determined by the Supreme Court of the United States; or

8       (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the
9    State court proceeding.

10   28 U.S.C. § 2254(d)(1) and (2).  See Penry v. Johnson, 532 U.S. 782, 792-96 (2001); Williams v.

11   Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

12   Analysis

13   I.  Improper Jury Instructions

14      Petitioner claims that the jury instructions describing the knowledge requirement

15   of California Penal Code section 32, were inadequate.

16      In general, federal habeas corpus relief is not available for jury instruction error

17   unless the error so infects the entire trial that the resulting conviction violates due process,

18   rendering the trial fundamentally unfair.  Estelle v. McGuire, 502 U.S. 62, 71-72 (1991); Duckett

19   v. Godinez, 67 F.3d 734, 745-46 (9th Cir. 1995).  A federal court must evaluate jury instructions

20   "'in the context of the overall charge to the jury as a component of the entire trial process.'"

21   Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (per curiam) (quoting Bashor v. Risley,

22   730 F.2d 1228, 1239 (9th Cir. 1984)).

23   ///

24

25      [4]  The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 apply to
     all federal habeas corpus actions filed after April 26, 1996.  See Lindh v. Murphy, 521 U.S. 320,
26   336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 11283, 1287 (9th Cir. 1997).

1    It is well established that the burden is on the prosecution to prove each and every

2  element of the crime charged beyond a reasonable doubt.  In re Winship, 397 U.S. 358, 364

3  (1970).  Due process is violated by jury instructions which use mandatory presumptions to

4  relieve the prosecution's burden of proof on any element of the crime charged.  Francis v.

5  Franklin, 471 U.S. 307, 314 (1985); see also Sandstrom v. Montana, 442 U.S. 510 (1979).  A

6  mandatory presumption is one that instructs the jury that it must infer the presumed fact if certain

7  predicate facts are proved.  Francis, 471 U.S. at 314.  On the other hand, a permissive

8  presumption allows, but does not require, the trier of fact to infer an elemental fact from proof of

9  a basic fact.  County Court of Ulster County v. Allen, 442 U.S. 140, 157 (1979).  The ultimate

10 test of the constitutionality of a presumption "remains constant:  the device must not undermine

11 the factfinder's responsibility at trial, based on evidence adduced by the State, to find the

12 ultimate facts beyond a reasonable doubt."  Ulster County, 442 U.S. at 156 (citing In re Winship,

13 397 U.S. at 364)).

14   In the present case, petitioner admits that the jury could have easily concluded that

15 his shouted warning was made with the intent to assist Gyorgy in avoiding arrest.  Nevertheless,

16 petitioner contends, an instruction was necessary to preclude the jury from convicting him based

17 on the finding that he intended to help Gyorgy avoid arrest on the yet to be discovered second

18 narcotics charge, the charge which resulted from the search on October 29, 1996.  (Pet. at 9.)

19   The California Court of Appeal rejected this very claim.  In its decision, the

20 appellate court pointed out that knowledge of a warrant was not a legal element of the accessory

21 charge.  California Penal Code section 32 simply defines the accessory offense as follows:

22   Every person who, after a felony has been committed, harbors,
     conceals or aids a principal in such felony, with the intent that said
23   principal may avoid or escape from arrest, trial, conviction or
     punishment, having knowledge that said principal has committed
24   such felony or has been charged with such felony or convicted
     thereof, is an accessory to such felony.

25 ///

26 ///

5

1    As a result, the trial court instructed the jury that:

2              In order to prove this crime, each of the following elements must
               be proved:
3
4              1.  A felony, namely, possession for sale of methamphetamine by
               Greg Gyorgy, was committed.

5              2.  Defendant harbored, concealed or aided a principal in that
               felony with the specific intent that the principal avoid or escape
6              arrest, trial, or conviction or punishment.

7              3.  Defendant did so with knowledge that the principal was <u>charged</u>
               with having committed the felony.
8

9    (CALJIC No. 6.40, as given.)(emphasis added)  The appellate court found that the jury was

10   required to acquit the petitioner of the accessory charge unless they found he had the intent to

11   assist Gyorgy in avoiding arrest for a <u>pending</u> charge.  (C032648 California Court of Appeal

12   Opinion at 9.)  The jury was presented with only one pending charge against Gyorgy at the time

13   of petitioner's arrest - the narcotics charge for which Gyorgy had an outstanding warrant.[5]  (<u>Id</u>. at

14   6-9.)  The petitioner's argument also makes little sense.  At the time of his arrest, petitioner

15   shouted to Gyorgy to flee.  This occurred prior to the search and seizure of the home.  The

16   officers did not search petitioner's house and surrounding property until after Gyorgy had fled.

17   Clearly, Gyorgy could not have been wanted by law enforcement officers for an offense that had

18   not yet been discovered by law enforcement officers.  Therefore, the knowledge element had to

19   relate to the previous charge Gyorgy had sustained prior to the search of petitioner's residence on

20   October 29, 1996.  We also conclude that a jury would have acted reasonably in arriving at the

21   same conclusion.

22             Petitioner argues that if he did not have knowledge that a warrant had issued for

23

24        [5]  Gyorgy committed felony possession of methamphetamine for sale on or about August
     8, 1996.  He was thereafter charged with this in a complaint and let out on bail on October 21,
25   1996, when he failed to appear at a scheduled court appearance.  An arrest warrant was issued
     and led to the October 29, 1996 executed search warrant for Gyorgy at the petitioner's residence.
26   (C032648 California Court of Appeal Opinion at 7.)

1   Gyorgy's arrest, he would not have the requisite knowledge that the police had any reason to

2   arrest Gyorgy for the charged offense.  However, the jury instructions did not require that

3   petitioner have knowledge of Gyorgy's warrant, but only knowledge that Gyorgy had been

4   charged with possession for sale of methamphetamine.  Petitioner concedes that the first and

5   second elements of  CALJIC No. 6.40 have been met.  Petitioner insists that it is the third

6   element that is inadequate.  However, as previously stated, this court disagrees.

7         Moreover, this court lacks jurisdiction in a state prisoner habeas corpus

8   proceeding to determine whether state law  was properly applied.  <u>Paradis v. Arave</u>, 954 F.2d

9   1483, 1493 (9th Cir. 1992); <u>see</u> <u>also</u> <u>Rich v. Calderon</u>, 170 F.3d 1236, 1240 (9th Cir. 1999).

10  Petitioner argues that the trial judge violated his due process rights by omitting an element of the

11  charged offense from the jury instructions.  However, as described above,  Penal Code § 32 does

12  not require that petitioner had actual knowledge of Gyorgy's outstanding warrant.  Therefore, the

13  jury instruction was proper, and petitioner's first claim should be denied.  <u>See</u> <u>also</u> <u>Teague v.</u>

14  <u>Lane</u>, 489 U.S. 288 (1989); <u>O'Dell v. Netherland</u>, 521 U.S. 151 (1997).

15  II.  <u>Ineffective Assistance of Counsel</u>

16        Next, petitioner contends that his trial counsel was ineffective.  The Sixth

17  Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set

18  forth the test for demonstrating ineffective assistance of counsel in <u>Strickland v. Washington</u>,

19  466 U.S. 668 (1984).  First, a petitioner must show that, considering all the circumstances,

20  counsel's performance fell below an objective standard of reasonableness.  <u>Strickland</u>, 466 U.S.

21  at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to have

22  been the result of reasonable professional judgment.  <u>Id</u>. at 690.  The federal court must then

23  determine whether in light of all the circumstances, the identified acts or omissions were outside

24  the wide range of professional competent assistance.  <u>Id</u>.  "We strongly presume that counsel's

25  conduct was within the wide range of reasonable assistance, and that he exercised acceptable

26  professional judgment in all significant decisions made."  <u>Hughes v. Borg</u>, 898 F.2d 695, 702

1   (9th Cir. 1990)(citing <u>Strickland</u>, 466 U.S. at 689).

2          Second, a petitioner must affirmatively prove prejudice.  <u>Strickland</u>, 466 U.S. at

3   693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

4   unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. At 694.  A

5   reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id</u>.;

6   <u>see also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 391-92; <u>Laboa v. Calderon</u>, 224 F.3d 972, 981 (9th

7   Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient

8   before examining the prejudice suffered by the defendant as a result of the alleged

9   deficiencies...If it is easier to dispose of an ineffectiveness claim on the ground of lack of

10  sufficient prejudice...that course should be followed." <u>Pizzuto v. Arave</u>, 280 F.3d 949, 955 (9th

11  Cir. 2002) (quoting <u>Strickland</u>, 466 U.S. at 697).

12         Petitioner's argument regarding ineffective assistance of counsel is twofold.

13         First, petitioner argues that his counsel was ineffective because he neglected to

14  obtain a handwriting expert.  At trial there was conflicting testimony as to who authored a note

15  found in petitioner's home.  Along with his signed declaration,  petitioner submitted a copy of this

16  note.  Petitioner's declaration includes his own handwritten copy of the text.  Petitioner declares

17  that he copied the text without looking at the original.  (<u>See</u> Petitioner's Request to Expand the

18  Record; Ex. 7 & 9.)  The note advised Gyorgy that he should call the bail bondsman or he will be

19  arrested.  (<u>Id</u>.)

20         Significantly, petitioner does not claim that he informed his trial counsel that he

21  was not the author.  On appeal, petitioner did not challenge the fact he admitted to police that he

22  <u>was</u> the author.  (Respondent's Brief in the California Court of Appeal at 5; Appellant's Reply

23  Brief in the California Court of Appeal.)  Petitioner would have this court believe that his counsel

24  was ineffective for choosing not to introduce what would otherwise be considered incriminating

25  evidence.  Petitioner claims that had his defense counsel presented a handwriting expert, the

26  evidence would have discredited this police officer's testimony and proven that petitioner's

8

1    girlfriend was the author of the note.

2          A reasonable attorney could have easily concluded based on these facts that it

3    would be detrimental to petitioner's case to obtain a handwriting expert and produce comparisons.

4    Similarly, petitioner has failed to show that this evidence would have been beneficial to his case. .

5    Therefore, this claim should be denied because of the strong presumption that petitioner's trial

6    counsel acted reasonably.

7          Second, petitioner argues that his trial counsel was ineffective because he failed to

8    object to petitioner being forced to appear before the jury wearing shackles.[6]  In making this

9    argument, petitioner includes two declarations by jurors who confirm that they observed petitioner

10   being transported to and from the courtroom in shackles.  (Petitioner's Request to Expand the

11   Record; Ex. 1 & 2.)   Petitioner also includes a declaration from his trial counsel, Donald Heape,

12   confirming that petitioner was transported to and from the courtroom in shackles while in the

13   jury's presence.  (Petitioner's Request to Expand the Record; Ex. 4.)  Mr. Heape does not

14   remember asking the trial court specifically to admonish the jury regarding petitioner's shackling.

15   (Id.)  However, Mr. Heape does recall protesting  petitioner's transportation  to and from the

16   courtroom in shackles.  (Id.)  Petitioner was not shackled while court was in session during the

17   duration of the four-day trial.  (Id.)

18          Absent an essential state interest, a criminal defendant has a constitutional

19   guarantee to be free from shackles and handcuffs in the presence of jury.  Williams v. Woodford,

20   384 F.3d 567, 591 (9th Cir. 2004).  In the present case, the court did not order the petitioner to be

21   shackled or handcuffed.  Id.

22          The  petitioner describes police officers putting waist-chains and handcuffs on him

23   while he was being transported to and from the county jail, during morning, lunch and afternoon

24   _____

25          [6] Notably, petitioner filed a request, on November 3, 2003, to expand the record to
     include various declarations.  (See Docket No. 32.)  To date, respondents have not objected to
26   such expansion.  Therefore, the court will grant this request.

1  breaks, and while being escorted to the restroom.  The petitioner explains that the jury saw him

2  being shackled or unshackled before or after jail transport and while in the courtroom corridor.

3  As a result, petitioner argues that the jury could have characterized him as lawless and dangerous.

4          The Ninth Circuit has held that a jury's brief or inadvertent glimpse of a defendant

5  in physical restraints outside of the courtroom does not warrant habeas relief unless the petitioner

6  makes an affirmative showing of prejudice.  Ghent v. Woodford, 279 F.3d 1121, 1133 (9th Cir.

7  2002).  The Ghent court found that they jury's occasional and brief glimpses of the defendant in

8  physical restraints is not inherently or presumptively prejudicial.  Id.  Moreover, there is no

9  prejudice when members of the jury see the defendant in shackles in the court corridor as he is

10  being transported to and from court.  Castillo v. Stainer, 983 F.2d 145, 148 (9th Cir. 1992); see

11  also United States v. Haliburton, 870 F.2d 557, 560-62 (9th Cir. 1989); Wilson v. McCarthy, 770

12  F.2d 1482, 1485-86 (9th Cir. 1985).

13          In the present case, one of the jurors recalls the trial judge on at least two occasions

14  admonishing the jury to disregard the fact that the petitioner was in shackles.[7] (Petitioner's

15  Request to Expand the Record; Ex. 1.)  The other juror recalls the judge making the

16  admonishment that petitioner's appearance should not be a factor in the jury's decision.  (Id.; Ex.

17  2.)  Three other jurors advised private investigator Larry Fuller that they "did not believe they had

18  seen the petitioner in shackles". (Id.; Ex. 3.)

19          Thus, petitioner has failed to show that he was prejudiced in such a fashion to

20  overcome the strong presumption that his counsel was effective.   Therefore, both of petitioner's

21  ineffective assistance of counsel claims should be denied.

22  III.  Cruel and Unusual Punishment

23          Lastly, petitioner claims that his sentence of fifty-five years to life constitutes cruel

24  and unusual punishment.

25  _____

26          [7] Petitioner states that he cannot find this in the record.  However, only portions of the
    record have been provided to this court.  So the court will disregard this accusation.

1    Respondent contends petitioner is precluded from bringing his cruel and unusual

2   punishment claim because he failed to raise it on direct appeal to the state court.  See O'Sullivan

3   v. Boerckel, 526 U.S. 838, 848 (1999).  The exhaustion of state court remedies is a prerequisite to

4   the granting of a petition for writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  If exhaustion is to be

5   waived, it must be waived explicitly by respondent's counsel.  28 U.S.C. § 2254(b)(3).[8]  A waiver

6   of exhaustion, thus, may not be implied or inferred.  A petitioner satisfies the exhaustion

7   requirement by providing the highest state court with a full and fair opportunity to consider all

8   claims before presenting them to the federal court.  Picard v. Connor, 404 U.S. 270, 276 (1971);

9   Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir.), cert. denied, 478 U.S. 1021 (1986).

10    The state court has had an opportunity to rule on the merits when the petitioner has

11   fairly presented the claim to that court.  The fair presentation requirement is met where the

12   petitioner has described the operative facts and legal theory on which his claim is based.  Picard,

13   404 U.S. at 277 - 78.  Generally, it is "not enough that all the facts necessary to support the federal

14   claim were before the state courts . . . or that a somewhat similar state-law claim was made."

15   Anderson v. Harless, 459 U.S. 4, 6 (1982).  Instead,

16          [i]f state courts are to be given the opportunity to correct alleged
           violations of prisoners' federal rights, they must surely be alerted to
17          the fact that the prisoners are asserting claims under the United
           States Constitution.  If a habeas petitioner wishes to claim that an
18          evidentiary ruling at a state court trial denied him the due process of
           law guaranteed by the Fourteenth Amendment, he must say so, not
19          only in federal court, but in state court.

20   Duncan v. Henry, 513 U.S. 364, 365 (1995).  Accordingly, "a claim for relief in habeas corpus

21   must include reference to a specific federal constitutional guarantee, as well as a statement of the

22   facts which entitle the petitioner to relief."  Gray v. Netherland, 518 U.S. 152, 116 S. Ct. 2074,

23   2081 (1996).  The United States Supreme Court has held that a federal district court may not

24   entertain a petition for habeas corpus unless the petitioner has exhausted state remedies with

25   _____

26      [8] A petition may be denied on the merits without exhaustion of state court remedies.  28
     U.S.C. § 2254(b)(2).

1  respect to each of the claims raised.  Rose v. Lundy, 455 U.S. 509 (1982).

2          In response, petitioner asserts that respondents fail to discuss the correct authorities

3  for procedural default.  Petitioner confuses the exhaustion requirement with procedural default.

4  Procedural default does preclude federal review of a state prisoner's federal habeas corpus if the

5  claims were decided in state court pursuant to independent and adequate state law.  Coleman v.

6  Thompson, 501 U.S. 722, 729-30 (1991).  By contrast, however, respondent asserts that petitioner

7  did not provide the highest state court with a full and fair opportunity to consider all claims,

8  before presenting the same to this court.  (Answer at 8.)   Thus, respondent is asserting that the

9  petitioner has not satisfied the exhaustion requirement, not that he is precluded by procedural

10  default.

11          Moreover, petitioner does not dispute that he failed to raise his cruel and unusual

12  punishment claim in state court.  Therefore, the California Superior Court properly rejected the

13  claim as unexhausted.

14          This claim should also be denied on its merits.  In Lockyer v. Andrade, 538 U.S. 63

15  (2003), the United States Supreme Court made clear that, in the context of an Eighth Amendment

16  challenge to a prison sentence, the "only relevant clearly established law amenable to the 'contrary

17  to' or 'unreasonable application of' framework is the gross disproportionality principle, the

18  precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme'

19  case." Andrade, 538 U.S. at 73 (citing Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem

20  v. Helm, 463 U.S. 277, 290 (1983); and Rummel v. Estelle, 445 U.S. 263, 272 (1980)).  The

21  Andrade Court concluded that two consecutive 25-years-to-life sentences with the possibility of

22  parole, imposed under California's three-strikes law following two petty theft convictions with

23  priors, did not amount to cruel and unusual punishment.  Id. at 77; see also Ewing v. California,

24  538 U.S. 11 (2003) (holding that a sentence of 25 years to life imposed for felony grand theft

25  under California's three-strikes law did not violate the Eighth Amendment).  "Outside the context

26  of capital punishment, successful challenges to the proportionality of particular sentences have

1  been exceedingly rare." <u>Rummel</u>, 445 U.S. at 272; <u>see</u> <u>also</u> <u>Ramirez v. R.A. Castro</u>, 365 F.3d

2  755, 765 (9th Cir. 2004).

3        The Supreme Court has cautioned federal courts to be "'reluctant to review

4  legislatively mandated terms of imprisonment.'" <u>Hutto v. Davis</u>, 454 U.S. 370, 374 (1982)

5  (quoting <u>Rummel</u>, 445 U.S. at 274). "Generally, as long as the sentence imposed upon the

6  defendant does not exceed statutory limits, [a federal court] will not overturn it on eighth

7  amendment grounds." <u>United States v. Zavala-Serra</u>, 853 F.2d 1512, 1518 (9th Cir. 1988). <u>See</u>

8  <u>also</u> <u>United States v. McDougherty</u>, 920 F.2d 569, 576 (9th Cir. 1990).

9        In <u>Andrade</u>, the Supreme Court upheld imposition of two consecutive twenty-five

10  years to life sentences under California's three strikes law after Andrade was convicted of petty

11  theft of $150.00 worth of videotapes, with several prior convictions for petty theft, burglary and

12  drug offenses.  538 U.S. at 66-67.  In <u>Ewing</u>, the Court upheld a sentence of twenty-five years to

13  life imposed under the same law following a conviction for grand theft involving three golf clubs

14  valued at $399.00 each following his four prior felony convictions for burglary and robbery.  538

15  U.S. at 17-18.  <u>See</u> <u>also</u> <u>Rummel</u>, <u>supra</u> (upholding life sentence with the possibility of parole for

16  recidivism based on three underlying felonies of fraudulent use of a credit card for $80.00, passing

17  a forged check for $28.36, and obtaining $120.75 under false pretenses); <u>Harmelin</u>, <u>supra</u>

18  (upholding sentence of life without the possibility of parole for a first offense of possession of

19  more than 650 grams of cocaine).

20        Here, petitioner was sentenced to fifty-five years to life.  The sentence was

21  imposed because of findings beyond a reasonable doubt that he had possessed methamphetamine

22  for sale, that he possessed additional methamphetamine, that he was an accessory to Gyorgy's

23  possession of methamphetamine for sale, that he resisted a police officer, that he previously

24  committed two robberies, that he had previously served two prison terms.  (C032648 California

25  Court of Appeal Opinion at 1.)  In a companion proceeding, petitioner was found guilty of

26  engaging in unlawful sexual intercourse with a minor.  (C032366 California Court of Appeal

1  Opinion at 1 & 2 n.2.)  Petitioner's criminal history extends back to 1973 and included grand

2  theft, forgery, unlawful firearm possession (twice), evasion of a police officer, and sale of

3  methamphetamine.  Id. at 3-4.  Petitioner has served a term in the California Youth Authority,

4  four county jail terms, and another prison term.  (C032366 CT Excepts at 138.)  Finally, petitioner

5  has previously violated conditions of probation and parole.  (Id.)

6         Petitioner relies on Solem v. Helm, 463 U.S. 277 (1983) as the basis for his

7  argument that his sentence was not proportion to his crimes.  However, two justices on the

8  Supreme Court determined that Solem was "scarcely the expression of clear and well accepted

9  constitutional law."  Harmelin v. Michigan, 501 U.S. 957, 965 (1991).  In fact these justices also

10  described  Solem as "simply wrong, noting that the Eighth Amendment contains no

11  proportionality guarantee."  Id.

12         Petitioner's was convicted of possessing 39 grams of methamphetamine with the

13  intent to sale.  In the past, the courts have sentenced petitioner to probation and granted parole.

14  Petitioner has also served smaller amounts of time in county jail and prison.  Thus, petitioner's

15  cruel and unusual punishment claim should also be denied on the merits.

16  Conclusion

17         Petitioner also requested that this court allow him to file an amended traverse.

18  Petitioner filed his amended traverse on November 3, 2003.  To date, the respondents have not

19  objected.  As a result, the court has considered the amended traverse and will grant petitioner's

20  request.

21         Therefore, IT IS HEREBY ORDERED THAT:

22         1.  Petitioner's request to expand the record, filed November 3, 2003, is granted;

23  and

24         2.  Petitioner's request to file an amended traverse also filed November 3, 2003, is

25  granted.

26         Also, IT IS HEREBY RECOMMENDED THAT the petitioner's petition for writ

1  of habeas corpus be denied.

2          These findings and recommendations are submitted to the United States District

3  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen

4  days after being served with these findings and recommendations, any party may file written

5  objections with the court and serve a copy on all parties.  Such a document should be captioned

6  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

7  shall be served and filed within five days after service of the objections.  The parties are advised

8  that failure to file objections within the specified time may waive the right to appeal the District

9  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10  DATED:  June 27, 2005.

11

12  _____

13  CRAIG M. KELLISON
   UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26